THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRENCE McCASTER, Defendant-Appellant.

Fifth District    No. 5—91—0286

Opinion filed February 1, 1993.

---

*Justices Harrison and H. Lewis were originally assigned to this case. Justices Chapman and Maag were later assigned to this case in substitution for Justices Harrison and H. Lewis, and Justices Chapman and Maag have read the briefs.

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Terrence McCaster, appeals from a judgment of the circuit court of St. Clair County entered on a jury verdict which found defendant guilty of unlawful delivery of a controlled substance in violation of section 401(d) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(d)). Defendant was sentenced to five years in the Department of Corrections and fined $20. In this ap-

peal, defendant raises three issues: (1) whether defense counsel rendered ineffective assistance of counsel by failing to tender jury instructions on the affirmative defense of mistake, (2) whether the trial court committed reversible error in refusing the jury's request for a copy of the transcript of proceedings, and (3) whether defendant is entitled to a $20 credit against his fine of $20. We affirm in part and vacate in part.

The facts of this case are not in dispute. On November 18, 1990, Special Agents Clarence Banks and Herman Tolar of the Division of Criminal Investigation (DCI) were working undercover in East St. Louis. At approximately 3:30 p.m., the two were driving in the area of 16th Street and Bond Avenue. Agent Tolar was driving the car, while Agent Banks was in the passenger seat. Banks waved some money at a group of men in an effort to buy some illicit drugs. Defendant was among the group. Defendant waved Banks and Tolar over to the curb. When the agents stopped, defendant asked them if they were the police. Banks replied that they were not the police. Defendant asked the agents what they wanted, and Banks told him a 10- or 20-cent piece, referring to $10 or $20 worth of crack cocaine. Defendant told Banks that he did not sell cocaine, but he had a friend who had some cocaine, and he would get some from him. Defendant walked away from the agents' car and back to his group of friends. A discussion ensued between members of the group as to whether Banks and Tolar were police officers. Defendant returned to the car and once again asked if they were police officers. Agent Banks replied they were not. Defendant then showed two rock-like substances to Banks. Banks chose one piece and paid defendant $20. The substance was later analyzed and was found to be .1 gram of a substance containing cocaine. Tolar and Banks drove away and notified a waiting surveillance unit that a drug transaction had occurred. Banks radioed a description of the suspect.

DCI Agent Edward Muzzey, as part of the surveillance team, helped arrest defendant. Muzzey took a Polaroid photo of defendant at the arrest scene. Shortly afterward he met with Banks and Tolar and showed them the photograph. Defendant was identified as the person who sold them cocaine.

DCI Agent Craig Koehler also participated in the arrest of defendant. Defendant told Koehler that he sold the cocaine to obtain beer money. Defendant also told Koehler that when the surveillance team arrived, he gave the money to another person who left the scene. Defendant stated he could not give a description of the person

to whom he gave the money because to do so would be "committing suicide." No money was recovered from defendant.

Defendant previously worked for DCI as a confidential source. Defendant specifically worked for Agent Banks in the past, and Banks had given defendant money to buy drugs. At the time of the instant transaction, Banks was unaware he had previously worked with defendant. The last time Banks had contact with defendant was August 2, 1989. Agent Muzzey also used defendant as a confidential source. According to Muzzey, he had contact with defendant in November 1988 and on August 8 and 9, 1989. On all three occasions, Muzzey gave defendant money for information. Muzzey did not recognize defendant at the time of the arrest. Joseph Bates, another DCI agent involved in defendant's arrest, testified that he also knew defendant from previous investigations in which defendant had assisted DCI as a confidential source. Bates remembers defendant telling him and Agent Koehler at the time of his arrest, "You know that I am not a dope man." Koehler remembers no such statement. Defendant's file as a DCI confidential source was closed in October 1990, because none of the agents were using him as a confidential source.

The defense proceeded under a theory of entrapment. Defendant testified he went up to the agents' car and immediately asked if they were police. Banks told defendant he wanted to buy some drugs. Defendant told Banks he did not have any drugs. Banks insisted that defendant get him some drugs. Defendant went to a group of men in the area and got "two twenties" of cocaine. Agent Banks picked one rock of cocaine and gave defendant $20. The agents then drove away. Defendant testified he gave the $20 to the man from whom he got the cocaine. Defendant stated that Agent Banks saw defendant give the other man the money. Agents Bates and Tolar arrested defendant. Bates asked defendant who had the money and the drugs, but defendant could not answer him because his "life wouldn't be worth a dime on the streets" if he did. Defendant explained that he knew the agents in the car were the police, but he did not know if they were doing undercover work or if they wanted the drugs for their own use. Defendant testified that he had worked as a confidential source for DCI in the past. Defendant specifically worked with Agent Bates in the past and told Bates at the time of his arrest that he did not sell dope. Defendant admitted he was convicted of burglary in 1981 and criminal sexual assault in 1984.

During jury deliberations, the jury sent out a note requesting a dictionary and a transcript of proceedings. The trial court denied the jury's request. Ultimately, the jury found defendant guilty.

The first issue we are asked to address is whether defense counsel rendered ineffective assistance by failing to tender jury instructions on the affirmative defense of mistake. Defendant argues that while entrapment was a proper defense on which to proceed, the facts of this case, especially defendant's testimony, also point to the affirmative defense of mistake. Because defense counsel failed to tender mistake instructions, he was ineffective and deprived defendant of his constitutionally protected right to effective assistance of counsel. (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8.) The State replies that defense counsel's conduct in representing defendant was more than adequate under the requirements of *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and that the defense of mistake was not a viable alternative in view of the evidence presented in the testimony of defendant.

To support a charge of ineffective assistance of counsel, a defendant must prove two elements: first, that his attorney failed to perform as a reasonably competent attorney, and second, that there exists a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different, *i.e.*, that defendant was prejudiced by the attorney's actions. (*Strickland v. Washington*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) A reasonable probability has been defined by the Supreme Court as one that is sufficient to undermine confidence in the outcome, and to make this finding, a court must consider the totality of the evidence presented to the finder of fact. (*Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.) Under the guidelines set forth in *Strickland*, the focus is upon the fundamental fairness accorded the defendant at trial. Underlying this framework, however, is the strong presumption that counsel's conduct falls within the broad realm of reasonable professional assistance, and therefore, a reviewing court will not second-guess matters which involve counsel's judgment, discretion, trial tactics or trial strategy. *People v. McKendrick* (1985), 138 Ill. App. 3d 1018, 486 N.E.2d 1297.

In the present case, counsel's decision to pursue the entrapment defense is a matter of trial strategy. The testimony presented at trial lends some credence to the entrapment theory, and we cannot say defense counsel's choice of strategy was patently erroneous. While the record may also lend some support to a theory of mistake,

we cannot say that defense counsel's failure to tender a mistake instruction was not within the broad range of reasonable professional assistance. It is easy to second-guess defense counsel after the verdict is rendered, but the record here supports an entrapment defense as a viable defense and reveals defense counsel's proficiency. Moreover, defendant has not convinced us that submitting mistake instructions would have made the outcome of the trial different.

At trial, defendant testified that he knew Agent Banks as a DCI agent because he had previously worked for him as a confidential source. When Banks drove by and waved money at him, defendant went to talk to Banks and the driver of the car, Agent Tolar. Defendant testified he also worked with other DCI agents in the past as a confidential source. On this occasion, however, there was no discussion about defendant assisting DCI. Defendant asked Banks and Tolar whether they were the police, and they denied it. Defendant even discussed whether Banks and Tolar were police officers with other persons found in the area where the drug transaction occurred. No testimony was presented by defendant or any other witness that there was either a discussion or any agreement between defendant and the agents that he would be assisting the agents in this particular instance as a confidential source. By all accounts, defendant had not had contact with DCI since August of 1989. Defendant's file as a DCI confidential source was closed in October 1990, because none of the agents were utilizing him at that time. Further, defendant testified that he believed Banks may have been purchasing the crack cocaine for personal use. It is clear from the testimony that there was no agreement between the parties that defendant would be assisting them as a confidential source in this particular instance.

The testimony, including defendant's, does not convince us that the jury's determination would have been any different even if defense counsel submitted mistake instructions. The affirmative defense of mistake relies on many of the same facts as those relating to the entrapment defense. The jury did not believe defendant had been entrapped, and defendant has not convinced us that the jury would have believed defendant acted as he did under the mistaken belief that he was a confidential source for Agents Tolar and Banks on this particular day. Agent Koehler testified defendant gave a statement to him that he had sold the cocaine to Banks and Tolar in order to obtain beer money. It is probable that the jury found defendant, who had two prior convictions, not credible, and that they instead believed the testimony of the DCI agents. Accordingly, we find that no ineffective assistance of counsel has been demonstrated.

The second issue we are asked to consider is whether the trial court committed reversible error in refusing the jury's request for a copy of the transcript of proceedings. Defendant acknowledges that whether to grant a jury's request to review testimony lies within the sound discretion of the trial court (*People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577) but insists here the trial court proceeded under the mistaken impression that it had no authority to entertain the jury's request. Defendant requests that we reverse his conviction and remand for a new trial because the trial court failed to exercise its discretion to grant the jury's request. The State replies that defendant waived this issue by failing to include this issue in his post-trial motion. The State further contends that the waiver doctrine cannot be avoided, as requested by defendant, because even if error did occur, it did not amount to plain error or deprive defendant of effective assistance of counsel. We agree.

In order to preserve an issue for appeal, both a trial objection and a written post-trial motion raising the issue are required. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The rationale for such a rule was stated in *People v. Caballero* (1984), 102 Ill. 2d 23, 464 N.E.2d 223:

> "Failure to raise issues in the trial court denies that court the opportunity to grant a new trial, if warranted. This casts a needless burden of preparing and processing appeals upon appellate counsel for the defense, the prosecution, and upon the court of review. Without a post-trial motion limiting the consideration of errors considered significant, the appeal is open-ended. Appellate counsel may comb the record for every semblance of error and raise issues on appeal whether or not trial counsel considers them of any importance." 102 Ill. 2d at 31-32, 464 N.E.2d at 227.

■ In the instant case, defense counsel did not raise this issue in a post-trial motion; therefore, this issue is waived. Moreover, we do not believe that defense counsel's failure to raise this issue in defendant's post-trial motion constitutes plain error or ineffective assistance of counsel.

Defendant acknowledges it is within the discretion of the trial court to allow or refuse a jury's request to review testimony. (*People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577.) Substitute defense counsel, present during the trial court's discussion of its decision to deny the jury's transcript request, asked the trial court to reconsider its decision to deny the request and to question the jury about what

portions of the transcript were being requested. The trial court responded:

> "Okay. I think at this point the jury has heard the evidence. The Court is not going to set a precedent for requiring transcripts to be prepared during deliberations. If the Appellate Court feels that every defendant is entitled to have daily transcripts prepared of a trial, they can impose that burden upon the trial courts. But at this point I will not do it. Objection noted."

In our estimation, the trial court did use its discretion in this matter and determined it unnecessary to allow the jury to see a written transcript of proceedings. This trial was relatively short, lasting less than two full days, and the evidence was straightforward. We do not believe a copy of the transcript was vital to deliberations. Consequently, assuming, *arguendo*, that defendant did not waive this issue, we do not find that the trial court abused its discretion in denying the jury a copy of the transcript. Likewise, we do not believe that trial counsel's failure to raise the alleged error in a post-trial motion constituted ineffective assistance of counsel under the *Strickland* standard previously discussed. We find that the trial court did not commit reversible error in refusing the jury's request for a copy of the transcript.

■■ The last issue we are asked to consider is whether defendant is entitled to a $20 credit against his fine of $20. The State concedes that defendant is entitled to a credit of $20 against his fine pursuant to section 110—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 110—14). Accordingly, we vacate defendant's fine of $20.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed in part and vacated in part.

Affirmed in part, vacated in part.

WELCH and MAAG,* JJ., concur.

---

*Justice Harrison participated in oral argument. Justice Maag was later assigned to this case in substitution for Justice Harrison, and Justice Maag has read the briefs and listened to the audiotape of oral argument.