# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Sanders*, 2012 IL App (1st) 102040

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONTRELL SANDERS, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-2040 |
| Filed<br>Rehearing denied<br>Modified opinion filed | February 14, 2012<br>March 13, 2012<br>March 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for aggravated battery with a firearm, aggravated discharge of a firearm, and aggravated unlawful use of a weapon were upheld on appeal where the victim's testimony was sufficient to establish defendant's guilt beyond a reasonable doubt and testimony concerning defendant's gang affiliation and threats made against one victim was properly admitted in evidence, and further, defendant's claim that the automatic transfer provision of the Juvenile Court Act was unconstitutional was rejected. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-12552-02; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and Stephen L. Gentry, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, Kathleen Warnick, and Adam W. Delderfield, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Presiding Justice Quinn and Justice Cunningham concurred in the judgment and opinion.

## OPINION

¶ 1     Following a bench trial, the trial court found defendant Dontrell Sanders guilty of aggravated battery with a firearm, aggravated discharge of a firearm, and aggravated unlawful use of a weapon. On appeal, defendant contends that (1) he was not proven guilty beyond a reasonable doubt due to alleged infirmities in the eyewitness testimony, (2) he is entitled to a new trial because gang evidence and hearsay were improperly admitted, and (3) the automatic transfer provision of the Juvenile Court Act of 1987 (705 ILCS 405/5-130 (West 2010)) is unconstitutional. We affirm.

¶ 2                           I. BACKGROUND

¶ 3     Late at night in May 2009, Reginald Lewis and Denzell Gresham were looking for a parking space for the van that they were driving. While making a U-turn, however, they suddenly found themselves blocked in by another vehicle. According to both of the victims, a person got out of the back driver's-side door, ran toward their vehicle, and began firing a handgun at them. The victims ducked down in order to shield themselves from the gunfire, but Lewis was struck in the back by one round, which grazed his lung and broke two of his ribs. Gresham was uninjured in the attack. The shooter retreated and the other vehicle sped off, while Lewis and Gresham made their way to the hospital. Lewis collapsed in the entryway of the hospital, but he was successfully treated and later made a full recovery. These facts were undisputed, and the trial focused on the identity of the shooter and the driver of the other vehicle. We will recount additional testimony as necessary in our analysis.

¶ 4                           II. ANALYSIS

¶ 5               A. Sufficiency of the Evidence

¶ 6     Defendant's first argument on appeal is that the State failed to present sufficient evidence to prove him guilty beyond a reasonable doubt because the case against him relied solely on

Lewis' and Gresham's eyewitness testimony, which defendant argues was so inconsistent and impeached that it was completely unreliable.

¶ 7    At trial, both victims identified defendant as the shooter and his codefendant, Johnmel Phillips, as the driver of the other vehicle. The defense's strategy was to focus on inconsistencies in Gresham's trial testimony and a two-week gap between the shooting and the victims' identification of the two defendants as the shooter and driver in photo arrays and lineups.

¶ 8    The record demonstrates that Gresham's testimony regarding the identification of the defendants was at best inconsistent. Regarding the night of the shooting, on direct examination Gresham testified that although the shooter was 12 to 15 feet away and the area was lit by streetlamps, he was unable to see the shooter's face. On cross-examination, Gresham contended that he was unable to see the driver's face but that he had seen the shooter's face. Gresham denied that he had testified on direct that he was unable to see the shooter's face, but the record reveals that he did, in fact, say this. Gresham's testimony became even more unclear on redirect when, in response to the State's questions, Gresham stated that he had seen defendant step out of the vehicle and open fire. The record demonstrates that Gresham was confused by the parties' questions and was unclear about exactly what they were getting at, so it is impossible to tell from the record whether the inconsistencies in his testimony were caused by poorly framed questions from the attorneys, which was the State's view, or Gresham's inability to keep his story straight, as the defense later argued.

¶ 9    Gresham further testified that while he was at the hospital he was interviewed by an officer about the shooting. Gresham also testified inconsistently about this conversation, stating variously that the officer did not ask him for a description of his assailants and then that the officer had asked for a description. Either way, the defense later called the officer, who testified that Gresham did not identify or give a description of his assailants while he was at the hospital that night. Things became even more muddled when Gresham testified that he did not recall ever being shown a photo array. The defense, however, later offered testimony that about two weeks after the attack detectives presented Gresham with a photo array but he was unable to identify anyone in the array as his assailant. Yet two days after the photo array, Gresham picked both defendant and his codefendant out of a physical lineup as the shooter and driver, respectively. When Gresham later identified the men in court as his attackers, he conceded that prior to the night of the shooting he had never seen them before.

¶ 10    In comparison to Gresham's performance on the stand, Lewis' testimony was a model of clarity. On the night of the shooting, Lewis was the driver of the vehicle that he and Gresham were traveling in. When the other vehicle blocked them in, Lewis testified that at first he was unable to see the faces of the driver and the shooter because of the glare on the windshield from the streetlamps. When the other vehicle backed up slightly, however, Lewis was able to see that the driver was a man that Lewis knew as "Jamal," whom he later identified as codefendant Johnmel Phillips. Lewis testified that he had grown up in the same neighborhood as Phillips, though they were not close. Lewis stated that as he attempted to move his vehicle away from the other vehicle, Gresham alerted him that a door in the other vehicle had opened. When Lewis looked over at the vehicle, he saw a man running toward

him with a gun in his hand. As the man passed under the light of the streetlamps, his face was illuminated and Lewis recognized the man as defendant, whom he had also grown up with and knew as "Tank." Lewis testified that defendant had worked for Lewis' father for several years.

¶ 11 Lewis recalled that he was later interviewed at the hospital by an officer and that he told the officer that Tank and Jamal were the assailants. Lewis acknowledged that although he was heavily medicated at the time, he was able to speak with the officer for 10 or 15 minutes. When the defense later called the officer, the officer stated that he did not recall Lewis giving him either names or descriptions for the attackers. The officer did state, however, that Lewis had told him where the assailants usually hung out. About two weeks later, detectives also presented Lewis with a photo array, but unlike Gresham he was able to identify defendant as the shooter and Phillips as the driver at that time. At the lineups two days later, Lewis again picked out defendant and Phillips as his assailants.

¶ 12 Defendant maintains that the inconsistencies in Gresham's and Lewis' testimony render it unreliable and therefore insufficient to prove beyond a reasonable doubt that he was the shooter. When a defendant challenges the sufficiency of the evidence,

"our function is not to retry the defendant. [Citation.] Rather, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citations.] This means that we must allow all reasonable inferences from the record in favor of the prosecution. [Citation.] As a reviewing court, [w]e will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt. [Citation.]" (Emphasis omitted.) (Internal quotation marks omitted.) *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011).

¶ 13 Retrying the case is essentially what defendant is asking us to do here. Defendant does not argue that the State failed to offer *any* proof regarding some element of the offenses for which he was on trial, but instead urges us to reweigh the evidence against him. In fact, the majority of defendant's argument centers on an analysis of the weight that should be given to the eyewitness testimony of Lewis and Gresham under the factors for judging whether eyewitness testimony is credible. See *People v. Slim*, 127 Ill. 2d 302, 307-08 (1989) (listing five factors). However, "[a] single witness' identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification." *Id.* Even if we give defendant the benefit of the doubt and disregard Gresham's testimony, which was admittedly inconsistent and unclear, that would still leave Lewis' testimony as evidence against him. Not only did Lewis testify that he was able to view defendant at close range and under relatively good light, but he also testified that he *recognized* defendant as someone whom he knew.

¶ 14 Defendant makes much of purported inconsistencies in Lewis' testimony. In particular, pointing to the testimony of the officer from the hospital, defendant argues that Lewis did not identify defendant as the shooter or give defendant's description to the officer on the night of the shooting. Defendant argues that the fact that defendant was not positively identified

until the photo arrays and lineups two weeks later renders Lewis' testimony unreliable. This is not, however, a fair reading of the trial testimony. Although the record does disclose the officer's recollection of the conversation, it also makes clear that Lewis emphatically testified that he identified his attackers as "Tank" and "Jamal" when he spoke to the officer on the night of the shooting. It is notable that the officer testified that Lewis told him where his assailants could be found. Had Lewis in fact told the officer that he did not know who attacked him, which is the thrust of defendant's argument, then he would logically not be able to tell the officer where they habitually hung out. Although the officer testified that he did not recall Lewis providing names or descriptions, he specifically testified that Lewis told him where to find his assailants. The necessary logical inference from this is that Lewis must have told the officer something about the identity of his attackers, even if the officer did not recall at trial the specifics of what Lewis told him.

¶ 15        Even so, for purposes of our review it is not dispositive if Lewis' or Gresham's testimony was impeached or inconsistent because it "is for the trier of fact to resolve conflicts or inconsistencies in the evidence." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 59. Although the trier of fact's findings are "neither conclusive nor binding" on review, "[t]he trier of fact is best equipped to judge the credibility of witnesses, and due consideration must be given to the fact that it was the trial court that saw and heard the witnesses." *Id.* Both Lewis and Gresham testified that defendant was the person who shot at them, and their testimony, if believed by the trial court, is sufficient to establish defendant's guilt beyond a reasonable doubt. It was the job of the trial court in the first instance to determine whether or not Gresham and Lewis were credible. The trial court accepted their testimony about the shooting and their explanations for the inconsistencies. We cannot say that Gresham's and Lewis' testimony was so wholly incredible or so thoroughly impeached that it is incapable of being used as evidence against defendant. But *cf.*, *e.g.*, *People v. Rivera*, 2011 IL App (2d) 091060 (reversing on sufficiency-of-the-evidence grounds where the only evidence linking the defendant to the crime was incredible jailhouse informants, inconclusive DNA evidence, and purported statements of defendant that were prepared by police officers).

¶ 16                          B. Hearsay and Gang Evidence

¶ 17        Defendant next argues that the trial court erroneously admitted gang evidence and hearsay that allowed the State to bolster the testimony of Lewis and Gresham. One of the most unusual features of this case is that the crime appears at first glance to be completely random. Given that the evidence against defendant depended on a pair of eyewitness identifications that were made under admittedly stressful circumstances, the State devoted a significant portion of its case-in-chief to explaining the motive behind the crime. It is this evidence that defendant takes issue with.

¶ 18        About a year before the attack, Lewis was involved in car accident that left someone dead. Because a criminal case was pending against Lewis for the accident at the time of trial in this case, the trial court and the parties were intentionally vague about the specifics of that case when they questioned Lewis about it. The State's theory was that the May 2009 shooting was retaliation against Lewis for his involvement in the 2008 car accident. To prove this

theory, the State needed to demonstrate that defendant knew the car-accident victim. While Lewis was discussing his long-standing familiarity with defendant and his codefendant during the State's direct examination, the following exchange ensued:

"[The State]: And did you know whether or not Mr. Phillips [*i.e.*, the codefendant] knew the individual who died as a result of the car accident you had been involved in in June of 2008?

[Lewis]: Yes.

Q. What was their relationship?

A. I don't know their full relationship. I think they was gang members. I don't know.

[Defense counsel]: Objection.

THE COURT: Overruled. It is the basis of identification. Not for anything other than that.

[The State]: Were they friends?

[Lewis]: Yes.

THE COURT: I need to know his source of information; how he knows this.

[The State]: How do you know that the individual who died as a result of that accident in June, 2008 was a friend with [codefendant]?

A. Because when my mother went to try to talk to the other side, after the accident, they was all saying they was going to hurt my mother and that–

[Defense counsel]: Objection.

THE COURT: Overruled. Not for the hearsay. Not taking any hearsay statements for the truth of the matter asserted. Just in case his basis of knowing who [codefendant] is for purposes of how that may relate to his identification in court.

Finish your answer, please.

[The State]: When you mother went to talk to the family.

[Lewis]: They was saying what they was going to do to me. All of that. That's how she found out.

[Defense counsel]: I have an objection.

THE COURT: Again, there is some hearsay in there. I'm not considering any of that for the truth of the matter asserted. Just indicating how he says he knows who [codefendant] is, what his relationship is to the person he was involved in that incident with or may be involved in that incident with."

¶ 19 A short while later, Lewis explained defendant's relationship to the car-accident victim in the same manner:

"[The State]: Do you know if [defendant] had any relationship or friendship with the individual who died as a result of the accident in June, 2008?

A. Same. I only knew from gang affiliation."

¶ 20 Unlike when the State asked Lewis the same question regarding the codefendant's relationship with the person who died, there was no objection to this question regarding

defendant's relationship with the victim.

¶ 21    On cross-examination by codefendant's counsel, Lewis explained further how he knew that defendant and his codefendant were acquainted with the accident victim:

"[Defense counsel]: You indicated that you mother went somewhere, sometime around the time of the accident?

***

You don't know who she spoke to that night, do you?

A. Yes. She saw them in court. She pointed them out.

Q. Did she say she spoke to [codefendant] Johnmel Phillips?

A. She don't know him by name. She pointed him out.

Q. What did she say he said, sir?

A. That's one of the boys. The day she went over there. Her exact words were that's one of the boys right there that was talking."

¶ 22    Finally, Lewis recounted the following on cross-examination by defendant's counsel:

"Q. *** Had you even received threats from [defendant] before?

A. I said no, not personally.

Q. Not personally?

A. They always send messages.

Q. I think you said those messages came through your Mom?

A. Yes.

Q. And your Mom said [defendant] threatened you?

A. She didn't say [defendant]. She doesn't know him. She said those boys. She pointed. She didn't point Dontrell out when she saw him the first time.

Q. She didn't actually point at [defendant]?

A. No.

Q. When your Mom says those boys threatened you, she didn't mean [defendant] then?

A. I didn't say that.

Q. She didn't point at him, right?

A. No."

¶ 23    Defendant claims that there were two separate errors related to these exchanges. First, defendant claims that the trial court should not have allowed Lewis to testify about the alleged threats that defendant and codefendant were making because his mother's statements were hearsay. Second, defendant argues that the trial court should not have allowed Lewis to testify that defendant knew the accident victim through their common gang affiliation.

¶ 24    Turning first to the hearsay issue, defendant concedes that defense counsel objected to only some of the testimony that defendant contests, so defendant acknowledges that this issue is forfeit and may only be reviewed under the plain-error doctrine. See *People v. McLaurin*,

235 Ill. 2d 478, 496 (2009). Defendant alternatively argues that his trial counsel was ineffective for failing to object and properly preserve the hearsay issue. To succeed under either theory, however, there must have been an error. The threshold step of plain-error review is determining whether an error occurred (*People v. Thompson*, 238 Ill. 2d 598, 613 (2010)), and similarly, counsel cannot be ineffective for failing to object if there was no error to object to (*cf. People v. McGhee*, 2012 IL App (1st) 093404, ¶¶ 45-50).

¶ 25 In this case, it was not error for the trial court to allow Lewis to testify to his mother's statement. The hearsay rule only precludes out-of-court statements if they are offered for the truth of the matter asserted. See Ill. Rs. Evid. 801(c), 802 (eff. Jan. 1, 2011). The trial court was very clear, however, that it did not consider Lewis' mother's statements for their truth, that is, that defendant and his codefendant had threatened Lewis, but instead only to explain how Lewis knew who they were and that they were associates of each other and the accident victim. As the trial court noted on the record, this testimony explained how Lewis knew that defendant and his codefendant associated with friends of the accident victim: his mother pointed them out when they as a group attended a court hearing on Lewis' case. This testimony has nothing to do with anything that Lewis heard his mother say, but rather only what he personally saw and knew. Lewis' testimony on this point did not violate the hearsay rule and it was therefore not error for the trial court to allow it.

¶ 26 The second issue is Lewis' testimony that defendant was a gang associate of the accident victim. Defense counsel did not object to this testimony, so it is also forfeit and subject only to plain-error review. See *McLaurin*, 235 Ill. 2d at 496. As with the hearsay testimony, defendant also asserts ineffective assistance of counsel on this issue. The result, however, is the same.

¶ 27 The supreme court has long cautioned that evidence of gang membership should be admitted only sparingly and when absolutely necessary because of its prejudicial effect on a defendant. See, *e.g.*, *People v. Blue*, 205 Ill. 2d 1, 15 (2001). One common reason to allow gang evidence, however, is when it is used to prove motive in order to explain what is "an otherwise inexplicable act." (Internal quotation marks omitted.) *People v. Villarreal*, 198 Ill. 2d 209, 232-33 (2001).

¶ 28 There are three problems with defendant's argument on this issue. First, Lewis testified only that he *believed* that codefendant Phillips and the accident victim were gang associates, but his testimony was less equivocal regarding defendant's gang association with the victim. Still, there was at least some level of speculation in Lewis' testimony on this point (at least as far as Phillips is concerned), so let us assume for the moment that his testimony should not have been admitted either for that reason or because it was gang evidence. Either way, defendant's argument cannot succeed because the record demonstrates that the trial court disregarded the gang issue entirely. In fact, when it announced its findings at the end of the trial, the trial court did not refer to gang affiliation:

"It is pointed out to me as well by both sides in this case, both the prosecution and the defense that the government does not have to prove motive in a criminal case to show why a certain criminal activity may have take[en] place.

The fact of the matter is I have motive in this case. It was explained to me. It was

explained to me clearly. Mr. Lewis was involved in an incident where he is now under indictment himself, involving a hit and run accident. Apparently this person that was the victim of that accident was someone that may well have been near and dear to the defendants in this case or people or family members or friends and associates of them, [defendant] and [codefendant]. I do have evidence and motivation."

¶ 29    Defendant points out that the trial court later referred to the case as one involving a gang-related shooting, but the record demonstrates that this statement was made during a hearing on defendant's posttrial motion while the trial court was attempting to recall the specific evidence that was presented in the case. During that hearing, the trial court did refer to the case as gang related, but the record also reveals that the trial court's recollection of the specific evidence regarding this point was inaccurate and did not reflect the actual evidence presented at trial. (In fact, codefendant's counsel pointed this out to the trial court at the time.) We recognize that "comments by the trial court at a postsentencing hearing that shed light on claims of errors raised by the defendant are permissible; in fact, they are encouraged, to give[ ] the appellate court the benefit of the trial court's reasoned judgment on those issues." (Internal quotation marks omitted.) *People v. Baez*, 241 Ill. 2d 44, 130 (2011). In this case, however, the trial court's incorrect recollection of the evidence over two months after the trial concluded is not particularly helpful for divining the trial court's reasoning at the time of trial. Absent anything more clear cut in the record, the trial court's express findings on the record at the time of trial are the best indication of which facts it actually considered in making its ruling. Given that the trial court did not rely on the gang evidence at all as part of its factual findings, we are not persuaded that defendant was prejudiced by the gang references. Defendant therefore cannot succeed on either plain-error review or his claim of ineffective assistance of counsel. See *People v. White*, 2011 IL 109689, ¶ 133 ("[T]he closely-balanced-evidence prong of plain error is similar to an analysis for ineffective assistance of counsel based on evidentiary error insofar as a defendant in either case must show he was prejudiced ***.").[1]

¶ 30    Even leaving this aside, there is a second, independent problem with defendant's argument, so let us now assume that Lewis' testimony about defendant's gang affiliation was not speculative. The record is clear that defendant's own attorney used the gang evidence in order to bolster defendant's theory of the case and counter the identification testimony. Relying on the purported two-week gap between the shooting and Lewis' and Gresham's identification of defendant as well as the gang and threat evidence, defense counsel argued that Lewis and Gresham decided to falsely claim that defendant was the shooter as a preemptive measure. The defense strategy was summed up by defense counsel's argument during closing that "[Lewis is] thinking these people have been threatening me, I'm going

---

[1]Defendant also argues that this issue falls under the second prong of the plain-error doctrine, but defendant's analysis is cursory and does not explain why this particular issue, even if error, is by itself such a severe error that it falls into the small category of errors that require reversal without consideration of prejudice to the defendant. See *Thompson*, 238 Ill. 2d at 613-14. We consider that particular argument to be forfeit for lack of support. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008); *cf. People v. Fikara*, 345 Ill. App. 3d 144, 162-63 (2003).

to fix them." Assuming that the gang evidence (and the hearsay threat evidence, for that matter) was erroneously admitted at trial, the error was invited by defense counsel. Invited errors are not subject to plain-error review. See *People v. Patrick*, 233 Ill. 2d 62, 77 (2009).

¶ 31    Moreover, from the record we have before us it appears that defense counsel made a considered judgment to use this evidence in order to support the defense theory of the case. This was a strategic decision by defense counsel, and in the context of an ineffective assistance of counsel claim, "[t]here is a strong presumption that trial counsel's actions were the result of trial strategy rather than incompetence, and a court of review, therefore, will not second-guess decisions which involve counsel's discretion or strategy." *People v. Humphries*, 257 Ill. App. 3d 1034, 1041 (1994). Defendant does not argue that his counsel was ineffective for pursuing this strategy, but merely argues that defense counsel should have objected to the gang evidence. Yet counsel's decision not to object to the gang evidence was in line with the defense strategy at trial, so we cannot deem counsel's decision to be unreasonable in these circumstances. *Cf. McGhee*, 2012 IL App (1st) 093404, ¶¶ 45-50.

¶ 32    Even leaving the first two reasons aside, there is yet a third problem with defendant's argument: the purpose of the gang evidence was to establish a motive for what otherwise appears to be a random crime. On its face, the shooting makes little sense. Why would Lewis and Gresham be suddenly blocked in by an unknown vehicle and randomly attacked without provocation? If evidence regarding the fatal accident, defendant's relationship to the victim, and their common gang affiliation is taken into account, however, then the reason for the crime becomes clear. This is precisely the kind of situation in which gang evidence is commonly admitted to prove motive (see *Villarreal*, 198 Ill. 2d at 232-33), so it was not error for the trial court to allow Lewis' testimony about it.

¶ 33            C. Unconstitutionality of Automatic Transfer Provision

¶ 34    Defendant's final argument on appeal is that the automatic transfer provision of the Juvenile Court Act of 1987 (705 ILCS 405/5-130 (West 2010)) violates the due process clause of the fourteenth amendment of the United States Constitution, the prohibition against cruel and unusual punishment under the eighth amendment of the United States Constitution, and the proportionate penalties and due process clauses of the Illinois Constitution of 1970.

¶ 35    We recently addressed and rejected these same arguments in *People v. Jackson*, 2012 IL App (1st) 100398, however, and defendant now presents the exact same arguments. See also *People v. Salas*, 2011 IL App (1st) 091880. We see no reason to revisit that precedent in this case, and we therefore follow *Jackson* and *Salas* in rejecting defendant's claims of unconstitutionality.

¶ 36                      III. CONCLUSION

¶ 37    The testimony of Lewis and Gresham was sufficient to prove defendant guilty beyond reasonable doubt, and the trial court did not err by allowing the testimony regarding defendant's gang affiliation and the threats against Lewis. Finally, we reject defendant's claim that the automatic transfer provision of the Juvenile Court Act of 1987 is unconstitutional.

¶ 38    Affirmed.