2021 IL App (2d) 191060-U
No. 2-19-1060
Order filed August 30, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CM-732 |
| DEBBIE SELEP, | ) ) ) | Honorable Philip G. Montgomery, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The defendant's conviction for violating an order of protection is reversed and the cause remanded for a new trial where omission of a jury instruction was plain error that denied the defendant a fair trial.

¶ 2    In August 2019, a jury convicted the defendant, Debbie Selep, of violating an order of protection (720 ILCS 5/12-3.4(a) (West 2016)). The defendant was sentenced to 18 months of court supervision. On appeal, the defendant argues that improper jury instructions denied her a fair trial and that she received ineffective assistance of counsel. We reverse and remand for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4     On July 26, 2018, the defendant was charged with violating an order of protection (720 ILCS 5/12-3.4(a) (West 2016)). Specifically, the complaint alleged that the defendant was served with the order of protection and had notice of its contents. Further, the defendant violated the order in that she "came within 500 feet of the petitioner, Chelsea J. [Sword], and engaged in harassing communication with her." The defendant requested a jury trial.

¶ 5     At trial, Deputy Sarah Frazier testified that she had been employed by the De Kalb County sheriff's office for 25 years. On July 10, 2018, she served the defendant with a copy of an emergency order of protection. In addition to giving the defendant the order, she read, to the defendant, every remedy that was checked and explained what the order meant. Frazier identified People's Exhibit 1 as a copy of the summons. The summons was admitted without objection.

¶ 6     Chelsea Sword (née Selep) testified that the defendant was her mother. On July 10, 2018, she petitioned the court for an emergency order of protection. When asked the purpose for the petition, Sword stated that she was worried about her son's safety. The defendant objected on the basis of relevance, and the trial court sustained the objection. Sword identified People's Exhibit 2 as a copy of the emergency order of protection and it was admitted without objection. The record indicates that the order was to remain in effect until July 28, 2018.

¶ 7     Sword further testified that, on July 24, 2018, she accompanied her brother Charles to the De Kalb County courthouse for a guardianship proceeding. Another brother, Tony, was also there. Sword knew that, as Charles' guardian, the defendant would be in court that day. After the guardianship proceedings for that day concluded, Sword and her two brothers exited the courtroom. The defendant and Sword's Aunt Patti also exited the courtroom. The defendant started talking to Charles, and Aunt Patti and Tony stepped away to talk privately. Shortly

thereafter, Charles said he had to use the restroom, so he started walking toward the bathroom. The defendant followed him. Sword testified that she also wanted to use the restroom, so she walked in that direction also.

¶ 8 Sword testified that, when they reached the restrooms, Charles went inside. Sword waited outside for Charles because she knew Charles did not want to be alone with the defendant. While standing in the hallway outside the restroom, the defendant stated to Sword, "Chelsea, you really did it this time, you're ruining your life." Sword told the defendant not to speak to her as she had an order of protection. The defendant said she would not speak to Sword, rather she would speak to the air about Sword. The defendant then said, "My name is Chelsea. My mom helped me get my nursing license and my medical license and I will lose them both by the end of the year." Sword testified that these statements made her feel like she was being harassed and the defendant was threatening her career and livelihood.

¶ 9 Sword testified that the bailiff walked out of the courtroom at this time. Sword asked the bailiff for help. Sword told the bailiff that the defendant was harassing and threatening her, and that she had an order of protection against the defendant. The bailiff told the defendant that she would have to leave. The defendant proceeded to leave the courthouse. Shortly thereafter, Sword and her brothers also left the courthouse.

¶ 10 Sword did not report the incident that day. But a day or two later, she spoke to her attorney about the order of protection case. She explained to her attorney what had happened in the courthouse after the guardianship proceedings. Her attorney told her that she should report the incident because it sounded like a violation of the order of protection. After that conversation, she called the sheriff's office to make a report. Sword testified that she did not make a report the same

day as the incident because she was too emotional, was not thinking clearly, and did not immediately understand what had happened.

¶ 11    Following closing arguments, the trial court instructed the jury and sent them to deliberate. One of the instructions given to the jury was Illinois Pattern Jury Instructions, Criminal, No. 11.78 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 11.78), which set forth the four propositions that must be proved to support a conviction of violation of an order of protection.  No sub-instructions were given along with IPI Criminal 4th No. 11.78.   The summons and emergency order of protection were sent back to the jury room during deliberation, without objection from defense counsel.   The order stated that the defendant was prohibited from committing "[h]arassment, interference with personal liberty, physical abuse, or stalking" against Sword and Sword's son.  It also included a definition of harassment and listed certain acts that were presumed to be harassing.

¶ 12    During deliberations, the jury sent out two notes.  The first note contained three questions: (1) "Is the courthouse/court room considered a public place as described in the order of protection?"; (2) "Would the descriptions/definitions of harassment as written in order of protection apply to the spaces?"; and (3) "Are we exclusively ruling on harassing communication to the exclusion of other forms of harassment as described in [the] order of protection?"  The trial court suggested telling the jury, "You have all the evidence and instructions that you will receive. Please continue to deliberate."   The trial court asked defense counsel if she agreed and she responded, "Yes.  Thank you, your Honor."

¶ 13    The second note from the jurors stated, "We believe we are at an impass [*sic*] and are unable to reach a verdict as a whole group."  With agreement of defense counsel, the trial court instructed the jury to continue to deliberate.  Thereafter, the jury returned a guilty verdict.  Defense counsel did not file a motion for a new trial.  The trial court later sentenced the defendant to 18

months' court supervision, noting that the defendant had no prior criminal history. The defendant then filed a timely notice of appeal.

¶ 14                                   II. ANALYSIS

¶ 15    On appeal, the defendant argues that the trial court erred in failing to instruct the jury on the definition of "harassment." Alternatively, the defendant argues that trial counsel was ineffective in failing to request a jury instruction defining harassment and in failing to offer such an instruction in response to the jury's questions during deliberations. Finally, the defendant argues that trial counsel was ineffective in (1) failing to object to the order of protection going back to the jury room, as it described other bad acts allegedly committed by the defendant, and (2) failing to object, on the basis of hearsay, when the defendant testified that her attorney told her the exchange in the courthouse sounded like a violation of the order of protection.

¶ 16    At the outset, the State notes that there is a potential issue as to mootness because the defendant's period of court supervision should have already been completed. However, as the finding of guilt can have collateral consequences even if the defendant successfully completed her supervision, this appeal is not moot. *People v. Sheehan*, 168 Ill. 2d 298, 308 (1995); *People v. Vanhoose*, 2020 IL App (5th) 170247, ¶ 21 (completion of supervision did not render appeal moot because finding of guilt could be considered in future criminal proceedings, could affect one's ability to obtain work, and could negatively affect one's reputation).

¶ 17    Turning to the merits, the defendant's first contention on appeal is that the trial court erred in failing to give the definitional instruction for harassment to the jury. The defendant acknowledges that she did not preserve the issue for appeal, as she failed to object at trial or raise the error in a posttrial motion. See *People v. Herron*, 215 Ill. 2d 167, 175 (2005). Nonetheless, she asks us to consider the error under the plain error doctrine.

¶ 18    The plain-error doctrine allows a reviewing court to reach an unpreserved error when either: (1) the evidence in the case is closely balanced, regardless of the seriousness of the error, or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Id.* at 178-79. The first step of plain-error review is determining whether a clear or obvious error occurred. *People v. Sanders*, 2012 IL App (1st) 102040, ¶ 24. Whether the trial court failed to properly instruct the jury is a question of law subject to *de novo* review. *People v. Reddick*, 123 Ill. 2d 184, 196-200 (1988). "Whenever Illinois Pattern Jury Instructions, Criminal, contains an instruction applicable in a criminal case, giving due consideration to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI Criminal instruction *shall* be used, unless the court determines that it does not accurately state the law." (Emphasis added.) 210 Ill. 2d R. 451(a) (eff. Apr. 8, 2013).

¶ 19    In the present case, the defendant was charged with violating an order of protection. To prove the defendant guilty of violating an order of protection, the State was required to prove that she committed an act prohibited by a valid order of protection, and also that she did so after having been served notice of the contents of the order or having otherwise acquired actual knowledge thereof. 720 ILCS 5/12-30 (West 2016). Here, the complaint alleged that the defendant came within 500 feet of  Sword and engaged in harassing communication with her. The jury was properly given IPI Criminal 4th No. 11.78, which sets forth the four propositions the State had to prove to find the defendant guilty. Based on the allegations of the complaint, the first proposition in the pattern jury instruction was that "the defendant engaged in harassing communication with Chelsea [Sword]."

¶ 20    Illinois Pattern Jury Instruction, Criminal, No. 11.78E (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 11.78E), defines the word "harassment" as "knowing conduct which would cause a reasonable person emotional distress, which does cause emotional distress to the petitioner, and which is not necessary to accomplish a purpose that is reasonable under the circumstances."  The committee note states that this definitional instruction is to be given "when the word 'harassment' is used either in the description of the act or failure to act which has been inserted in Instruction 11.78."  IPI Criminal 4th No. 11.78E, Committee Note.  Further, Rule 451(a) (eff. Apr. 8, 2013), requires the trial court to use the Illinois Pattern Jury Instructions when an instruction is applicable in a criminal case.  In the present case, the jury was not given instruction IPI Criminal 4th No. 11.78E, which defines "harassment."  Because the definition of harassment was applicable in this case, as it was used in the first proposition of IPI Criminal 4th No. 11.78, the trial court erred in failing to give that instruction.

¶ 21    Having concluded that the failure to give the pattern jury instruction defining "harassment" was error, we must determine whether the error rises to the level of plain error.  The defendant argues that it was second-prong plain error, in that the error was so serious that she was denied a fair trial, because the lack of the instruction left the jurors confused about the definition of harassment.

¶ 22    In *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010), the supreme court took note that, in *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009), it had "equated the second prong of plain-error review with structural error, [in that it had] assert[ed] that 'automatic reversal is only required where an error is deemed "structural," *i.e.*, a systemic error which serves to "erode the integrity of the judicial process and undermine the fairness of the defendant's trial." ' " *Thompson*, 238 Ill. 2d at 613-14 (quoting *Glasper*, 234 Ill. 2d at 197-98, quoting *People v. Herron*, 215 Ill. 2d 167, 186

(2005)). However, in *People v. Clark*, 2016 IL 118845, ¶ 46, the supreme court explained that "although [its] decisions in *Glasper* and *Thompson* equated second-prong plain error with structural error, [it] did not restrict plain error to the types of structural error that have been recognized by the [U.S.] Supreme Court." In fact, our supreme court has applied second-prong plain error in contexts not involving structural error. See *People v. Clark*, 2014 IL App (1st) 123494, ¶ 40 (citing *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009) (the failure to apply the one-act, one-crime rule constituted second-prong plain error) and *People v. Walker*, 232 Ill. 2d 113, 131 (2009) (the failure to exercise discretion in denying a request for a continuance constituted second-prong plain error)). As such, even though the omission of a jury instruction on an element of an offense is not structural error (see *Neder v. United States*, 527 U.S. 1, 10 (1999)), it could still be second-prong plain error (*Clark*, 2016 IL 118845, ¶ 46).

¶ 23    Accordingly, we must determine whether the error in this case was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. See *Herron*, 215 Ill. 2d at 179. To show second-prong plain error resulting from the omission of a jury instruction, the defendant must establish that there was a "serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law." *People v. Sargent*, 239 Ill. 2d 166, 191 (2010). While the defendant must show that the omitted instruction created a "*severe* threat to the fairness of her trial," the defendant need not "prove beyond doubt that her trial was unfair because the omitted instruction misled the jury to convict her." (Emphasis in original.) *People v. Hopp*, 209 Ill. 2d 1, 12 (2004). "Fundamental fairness requires the trial court to give correct instructions on the elements of the offense in order to insure a fair determination of the case by the jury. Failure to so instruct the jury constitutes plain error." *People v. Williams*, 181 Ill. 2d 297, 318 (1998), as modified on denial of rehearing (Mar. 30, 1998).

¶ 24    We hold that second-prong plain error occurred here.  The definition of harassment contains three prongs: (1) that the defendant's conduct served no reasonable purpose; (2) that the conduct would cause a reasonable person emotional distress; and (3) that the conduct at issue did cause the petitioner emotional distress.  In the absence of the definition, the jury may not have realized that the State was required to establish all three prongs to prove the defendant guilty of violating the order of protection.  In fact, during closing argument the State argued that it had to prove that "the defendant engaged in harassing communication with Chelsea [Sword] while there was an emergency order of protection in place."  The State then made the following statement, "And you know who told you that contact was harassing?  Chelsea.  Chelsea told you that that contact was harassing."  However, the State never explained that it had to prove that a reasonable person would also have found the contact harassing or argued that that standard was met here.

¶ 25    The State argues that the lack of a definitional instruction for harassment was not plain error because the definition was included in the emergency order of protection, which was given to the jury during its deliberations.  However, this actually exacerbated the error.  The committee note for IPI Criminal 4th No. 11.78E explains that the Domestic Violence Act (750 ILCS 60/103(7) (West 2016)) creates a mandatory presumption that certain types of conduct cause emotional distress and that those presumptions must be rebutted by a preponderance of the evidence.  IPI Criminal 4th No. 11.78E, Committee Note.  While the order of protection defined harassment as stated in IPI Criminal 4th No. 11.78E, it went further and listed the various types of conduct that were presumed to cause emotional distress, *i.e.*, creating a disturbance at victim's place of employment; repeatedly telephoning the victim at work or home; repeatedly following the victim in a public place; repeatedly keeping the victim under surveillance; or threatening the victim with physical force.  These presumptions heightened the risk that the jury misapplied the law in finding

the defendant guilty or based its verdict on conduct not charged. In fact, the committee note specifically states that "[b]ecause of constitutional difficulties that would arise if the presumption were applied in criminal cases, the Committee believes that no instruction on the presumption should be given in a criminal prosecution for violation of an order of protection." *Id.*

¶ 26    The notes that the jury sent to the trial court during deliberations demonstrate that the definition of harassment with the included presumptions set forth in the emergency order of protection was confusing to the jury. One of the types of conduct listed in the order of protection that was presumed to cause emotional distress was "repeatedly following the petitioner about in a public place or places." The jury note asked whether the courthouse was a public place, whether the definitions of harassment as written in the order of protection applied to a courthouse, and whether they were ruling on harassing communication to the exclusion of other forms of harassment. The jury questions show that the jury was confused about the basis on which they could find the defendant guilty of violating the order of protection, *i.e.*, the charged conduct versus the presumptions set forth in the order of protection.

¶ 27    The State argues that the issue in this case was invited error because defense counsel did not request that the trial court respond to the jury's questions with the definition of harassment. However, while the parties are primarily responsible for preparing jury instructions, the trial court in a criminal case is responsible for "fully instructing the jury on the elements of the offense." *People v. Delgado*, 376 Ill. App. 3d 307, 314 (2007). "Where the instruction error was in a definition essential to the jury's assessment of the defendant's guilt or innocence *** it is reversible error, and the defendant is entitled to a new trial." *Id.* (citing *People v. Stromblad*, 74 Ill. 2d 35, 41 (1978)); see also 177 Ill. 2d R. 451(c) ("substantial defects" in criminal jury

instructions "are not waived by failure to make timely objections thereto if the interests of justice require.").

¶ 28     As we have determined that the failure to give the definitional instruction for harassment resulted in second-prong plain error, we need not address the defendant's additional contentions raised on appeal.  We must, however, address double jeopardy.  The double jeopardy clause of the United States Constitution prohibits the State from having another opportunity to try a case unless it has presented in the first trial sufficient evidence to prove the defendant guilty beyond a reasonable doubt.  *People v. Johnson*, 2013 IL App (2d) 110535, ¶ 84.  Thus, before remanding for a new trial, double jeopardy requires this court to rule upon the sufficiency of the evidence. *People v. Taylor*, 76 Ill. 2d 289, 309 (1979); *Johnson*, 2013 IL App (2d) 110535, ¶ 84.  We must determine whether, after considering all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 29     In the present case, the evidence was sufficient to support the defendant's conviction. There was evidence that the defendant was served with the order of protection and that she was within 500 feet of Sword in the courthouse at the guardianship proceedings.  Further, the evidence of the defendant's communication with Sword at the courthouse could be construed by a jury as serving no reasonable purpose, as being likely to cause emotional distress to a reasonable person, and as actually causing Sword emotional distress.   Accordingly, without determining the defendant's guilt or innocence, we hold that the evidence was sufficient to support conviction and retrial is not barred on double jeopardy grounds.

¶ 30                                III. CONCLUSION

- 11 -

¶ 31    For the reasons stated, the judgment of the circuit court of De Kalb County is reversed and the cause is remanded for a new trial.

¶ 32    Reversed and remanded.