2023 IL App (2d) 220081-U
No. 2-22-0081
Order filed May 1, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 20-CF-1603 |
| | ) | |
| JOSEPH CONRAD, | ) | Honorable |
| | ) | Alice C. Tracy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Kennedy concurred in the judgment.

**ORDER**

¶ 1   *Held*: The State prosecutor did not misstate the law or refer to defendant's prior convictions during closing argument. The trial court's response to the jury's request for definitions to commonly understood terms was appropriate.

¶ 2   Defendant, Joseph Conrad, appeals from his convictions for domestic battery in violation of sections 12-3.2(a)(1) and 12-3.2(a)(2) of the Criminal Code of 2012 (Criminal Code). 720 ILCS 5/12-3.3(a)(1), (a)(2) (West 2020). Defendant contends that (1) he was denied a fair trial when the State prosecutor misstated the law and improperly alluded to a previous domestic battery conviction; and (2) he was denied a fair trial when both the trial court and his defense counsel

failed to provide the jury with definitions of "essential elements" of the charged offenses. For the following reasons, we affirm defendant's convictions.

¶ 3                              I. BACKGROUND

¶ 4      On January 21, 2021, defendant was charged by grand jury indictment with two counts of aggravated domestic battery (counts I and II) and two counts of domestic battery (counts III and IV). Count I of the bill of indictment read as follows:

> "[T]hat on or about August 29, 2020, defendant *** committed the offense of AGGRAVATED DOMESTIC BATTERY – STRANGULATION *** in violation of Chapter 720, Act 5, Section 12-3.3(a-5), of the Illinois Compiled Statutes, as amended, in that defendant, in committing a Domestic Battery in violation of Illinois Compiled Statutes Chapter 720, Act 5, Section 12-3.2, knowingly caused bodily harm to Naticia Robinson-Allen, a family or household member of the defendant, in that he strangled Naticia Robinson-Allen by intentionally impeding the normal breathing of Naticia Robinson-Allen, by applying pressure to the neck or throat of Naticia Robinson-Allen."

Count II of the bill of indictment read as follows:

> "[T]hat on or about August 29, 2020, defendant *** committed the offense of AGGRAVATED DOMESTIC BATTERY – STRANGULATION *** in violation of Chapter 720, Act 5, Section 12-3.3(a-5), of the Illinois Compiled Statutes, as amended, in that defendant, in committing a Domestic Battery in violation of Illinois Compiled Statutes Chapter 720, Act 5, Section 12-3.2, knowingly made physical contact of an insulting or provoking nature with Naticia Robinson-Allen, a family or household member of the defendant, in that he strangled Naticia Robinson-Allen by intentionally impeding the

normal breathing of Naticia Robinson-Allen, by applying pressure to the neck or throat of Naticia Robinson-Allen."

Count III of the indictment read as follows:

"[T]hat on or about August 29, 2020, defendant *** committed the offense of DOMESTIC BATTERY – BODILY HARM *** in violation of Chapter 720, Act 5, Section 12-3.2(a)(1), of the Illinois Compiled Statutes, as amended, in that the defendant, knowingly caused bodily harm to Naticia Robinson-Allen, a family or household member of the defendant, in that said defendant grabbed and/or sat on and/or laid on Naticia Robinson-Allen's head and/or face and/or neck and/or body after the defendant has been previously convicted of aggravated domestic battery under Will County Circuit Court case 2011 CF 2371."

Count IV of the indictment read as follows:

"[T]hat on or about August 29, 2020, defendant *** committed the offense of DOMESTIC BATTERY – BODILY HARM *** in violation of Chapter 720, Act 5, Section 12-3.2(a)(2), of the Illinois Compiled Statutes, as amended, in that the defendant, knowingly made contact of an insulting or provoking nature with Naticia Robinson-Allen, a family or household member of the defendant, in that said defendant grabbed and/or sat on and/or laid on Naticia Robinson-Allen's head and/or face and/or neck and/or body after the defendant has been previously convicted of aggravated domestic battery under Will County Circuit Court case 2011 CF 2371."

¶ 5 On November 8, 2021, the matter proceeded to a jury trial, and the State called Naticia Robinson-Allen as its first witness. Robinson-Allen testified that she was engaged to and living with defendant in August 2020. They lived together in a hotel room at 306 North River Street in

Aurora. Robinson-Allen recalled that on August 28, 2020, she left work at 2:00 p.m. and returned to the room before going to bed at 8:30 p.m. As it was summertime, she went to bed nude. She was awakened in the middle of the night by defendant elbowing her and demanding sex. When she refused, defendant put his arm around her neck and attempted to "force his penis inside of [her]." Robinson-Allen screamed, prompting defendant to squeeze her neck tighter. When she tried to scream a second time, she was unable as defendant was squeezing her neck too hard and she could not breathe normally.

¶ 6     While struggling with defendant, Robinson-Allen scratched defendant with her right hand on his arm and neck. She was able to unlock and open the room door with her left hand, but defendant "took his foot and pushed the door back." When she was able to open the door a second time and "shove my body out of the door," she noticed a person standing outside in the hallway as defendant "was still choking [her]." Defendant released Robinson-Allen when he noticed the person in the hallway watching them.

¶ 7     The person in the hallway was Clayborn Young, an employee of the hotel. Robinson-Allen used Young's cell phone to call 911 immediately after the incident. People's Exhibit 1, a recording of the 911 call, was played for the jury. Robinson-Allen stated that it was difficult for her to speak during the call because her "throat was bothered" from defendant choking her. Ambulance and police arrived at the scene whereupon Robinson-Allen refused to let EMTs examine her. She testified that she went to the hospital the following day because she "wanted to make sure that they took [defendant] to jail for trying to kill me." She did not go to the hospital on the day of the incident because she thought defendant would not be arrested if she did.

¶ 8     People's exhibits 2 through 9, photos of Robinson-Allen taken by police at the scene of the incident, were introduced into evidence. Robinson-Allen viewed the photos and noted redness on

her collar, shoulder, and nose in several of the photographs. She admitted that she suffered no injuries aside from some pain on the right side of her neck that lasted several days. She stated that she had experienced anxiety and depression following the incident, as well as being "traumatized and scared."

¶ 9      The State next called Raymond Soto, a nurse in the Emergency Department at AMITA Mercy Center in Aurora. He testified that Robinson-Allen came to the hospital for treatment on the morning of August 29, 2020. She complained of "right-side neck pain and right-sided, kind of hip, abdominal pain." Aside from the pain, no physical injuries were detected.

¶ 10      The State called Clayborn Young to testify. Young worked as the night manager at the building and lived in Room 14. He was a 9 p.m. to 9 a.m. shift on the night of the incident. While watching television in the early morning hours of August 29, 2020, Young heard "a girl holler real loud." He jumped up and went to Room 15 where he "heard her hollering again and tried to *** open the door, but the door was locked." When Robinson-Allen opened the door, Young looked into the room and saw defendant with "his hand around her neck, choking her, *** the arm around her neck." Young indicated that defendant had Robinson-Allen in a "choke hold." He testified that Robinson-Allen looked "scared." After defendant released Robinson-Allen, she went back into the room to put on some clothes as she was naked during the incident. When she returned, Young told her she should call the police.

¶ 11      The State called Officer J. Flores of the Aurora Police. Flores was dispatched to the building at 2:49 a.m. for a domestic battery situation in which the 911 caller stated that she had been choked. He spoke to defendant and Robinson-Allen upon arrival. He could not recall any injuries to Robinson-Allen, but said he noticed "some redness" to her cheek. He noticed that defendant had a cut on his face and another on his toe. Robinson-Allen stated to police that her

throat was sore but refused transportation to the hospital. Defendant was arrested at the scene. The State then rested.

¶ 12    Following the denial of his motion for a directed verdict, defendant testified in his own defense. Defendant admitted that Robinson-Allen lived in the room with him but stated that he was the only name on the lease and the only person that paid rent. He denied being engaged to Robinson-Allen.

¶ 13    He recalled returning to the room from work at around 11:35 p.m. on August 28, 2020, to find Robinson-Allen in bed, looking at her phone. Defendant testified that "she looked upset with me," so he did not engage in conversation. He then did his workout and went to bed around 1:00 a.m. Robinson-Allen was still in bed, looking at her phone. Defendant then woke up some time later in the evening to use the bathroom and recalled Robinson-Allen was still in bed, looking at her phone. He was roused awake sometime later by Robinson-Allen punching him in the face. Defendant "bear-hugged her to restrain her." He did not know why she was upset. She then started yelling for help, opened the door, and exited the room in the nude. Defendant denied putting his arm around her neck or choking her.

¶ 14    People's Exhibits 13, 15, 16, and 18 through 21 were introduced into evidence. The exhibits were photographs of defendant taken by police on the date of the incident. They depicted scratches on his face, left bicep, ribs, and one of his toes. Defendant testified that the injuries were caused by Robinson-Allen.

¶ 15    Defendant recalled Young was around the corner of the hallway in front of his room rather than standing in the doorway when Robinson-Allen opened the door. Young could not have seen into the room from where defendant said he was standing.

¶ 16    Following defendant's reiteration that he was not engaged to Robinson-Allen but only having sex and living with her, the State asked defendant if he was trying to "minimize it, make it sound like she was just your roommate so that you would get in less trouble?" Defendant denied the suggestion.

¶ 17    The defense then called Officer Jesus Torres. Torres took photographs of Robinson-Allen on the date of the incident and did not observe any injuries to her. He could not recall Robinson-Allen having complained of any injuries, but his report mentioned an injury to the right side of her neck.

¶ 18    Over the State's objection, Robinson-Allen's certified conviction for domestic battery in Cook County was admitted as Defense Exhibit 1 for the purpose of defendant's self-defense theory. After eliciting rebuttal testimony from Flores and Robinson-Allen, the State moved to admit defendant's prior conviction for domestic battery to show knowledge and motive. The trial court denied the motion and the State rested. Defendant rested after recalling defendant and the parties made closing arguments. The jury then began deliberations.

¶ 19    The jury sent out notes reading (1) "Please define insulting. Please define provoking."; and (2) "Define bodily harm." The trial court responded to the jury that "[t]he law requires the jury to render its verdict on the evidence and instructions already given to the jury." Defense counsel did not object.

¶ 20    The jury then sent out another note that read, "We have a unanimous verdict on (3) counts. We are seemingly deadlocked on (1) count. At what point do we exhaust argument on the deadlocked count?" The trial court answered with, "I cannot answer your question at this time. Please continue to deliberate." Both parties agreed with the trial court's answer. The jury returned verdicts of not guilty on the aggravated domestic battery charges (counts I and II) and guilty on

the domestic battery charges (counts III and IV). Defendant was sentenced to five years' imprisonment.

¶ 21     Defendant then timely filed this direct appeal.

¶ 22                                II. ANALYSIS

¶ 23     Defendant raises two contentions in this appeal. First, he contends he was denied his right to a fair trial due to two comments made by the State prosecutor during closing argument. Second, he contends that the trial court committed plain error and denied him a fair trial when it did not provide definitions to the terms noted in the jury's questions during deliberation. Defendant concedes that neither contention was preserved for review as defense counsel failed to contemporaneously object or include the issues in a post-trial motion. However, he asserts that the contentions may still be reviewed by this court under the plain-error doctrine.

¶ 24     A reviewing court may review unpreserved errors under the plain-error doctrine (1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Sebby*, 2017 IL 119445, ¶ 48. The initial analytical step under either prong of the plain error doctrine is determining whether there was a clear or obvious error at trial. *Id*. ¶ 49.

¶ 25     Beginning with defendant's first contention, he alleges that the State prosecutor made two improper statements during closing argument that caused substantial prejudice to defendant. First, he alleges that the prosecutor misstated the law in saying to the jury "if you don't believe [Robinson-Allen] and you don't believe the defendant, let's say, you have to look to your

tiebreaker, which is Clayborn Young." Second, defendant alleges it was improper for the prosecutor to tell the jury that defendant "understands this process. He understands how to get up on the stand and spin a story to try to distract you from what actually happened in this case." Defendant argues that the second comment improperly brought his previous domestic battery conviction to the attention of the jury after the trial court had denied its admittance.

¶ 26     Prosecutors have wide latitude in the content of their closing arguments. *People v. Perry*, 224 Ill. 2d 312, 351 (2007). The prosecutor may comment during closing argument on the evidence and on any fair and reasonable inference the evidence may yield, even if the suggested inference reflects negatively on the defendant. *Id.* at 351-52. Reviewing courts will consider the closing argument as a whole instead of focusing on selected phrases or remarks. *Id.* at 352. A reviewing court will find reversible error only if the defendant demonstrates that the improper remarks were so prejudicial that real justice was denied or that the verdict resulted from the error. *Id.*

¶ 27     Prior to the State prosecutor's closing argument, the trial court instructed the jury as follows:

> "What the lawyers say during the arguments is not evidence and should not be considered by you as evidence.
>
> If a lawyer makes a statement that is not based on the evidence or the reasonable inferences to be drawn from the evidence, you should disregard the statement. You are to rely on your own recollection of the evidence."

A jury is presumed to follow a trial court's jury instructions. *People v. Tapley*, 2020 IL App (2d) 190137, ¶ 81.

¶ 28     As to defendant's argument regarding the prosecutor's alleged misstatement of the law by referring to Young as a "tiebreaker" witness, our review of the record reveals that, when viewed

in context of the closing argument as a whole, the statement was appropriate based on the evidence presented. Young's testimony was that of an objective third-party witness. He testified that he heard screaming coming from Room 15, and observed defendant attacking Robinson-Allen when he went to investigate. The statement from the prosecutor was based on the evidence presented and the jury could make a reasonable inference that Young observed what he testified to, even if such observation reflected negatively on defendant. See *Perry*, 224 Ill. 2d at 351-52. We find no error with the prosecutor's statement.

¶ 29    Similarly, when viewed in context of the closing argument as a whole, we find no error with the prosecutor telling the jury that defendant "understands this process. He understands how to get up on the stand and spin a story to try to distract you from what actually happened in this case." When viewed in totality, the prosecutor's closing argument focused significantly on defendant's credibility, specifically when it came to defendant's changing stories as to whether Robinson-Allen lived with him. To wit:

"She didn't live there. That's what he said. She didn't live there. And then, all of a sudden, she did live there.

***

It's interesting that he would also say that [Robinson-Allen] is his roommate; that she didn't live there, but then she did live there, and they had a sexual relationship. And then her stuff was there, her toiletries were there, her clothes were there.

But, initially, he said she wasn't even his roommate. That was his first statement. She wasn't my roommate. Then she was the roommate. Then they did have sexual relations. So that changed pretty quickly in his testimony.

***

I want to remind you that the defendant *** is a 30-year-old man. He is a grown man. He may be wearing a suit and a shirt that's too big for him. He may look like a child, but he is a grown man. He is a grown man who made adult decisions on August 29, 2020. He understands this process. He understands how to get up on the stand and spin a story to try to distract you from what actually happened in this case."

¶ 30    The prosecutor's comments never explicitly or implicitly referred to defendant's prior domestic battery conviction. Telling the jury that defendant "understands this process" was based on a reasonable inference that defendant's testimony lacked credibility and was an attempt to avoid legal consequences from being found guilty of the charged conduct. We can find no error with the prosecutor's comments during closing argument, and, accordingly, plain error review of this issue is unmerited. *People v. Eppinger*, 2013 IL 114121, ¶ 19.

¶ 31    Although we hold that the prosecutor's comments were not error, we do express concern as to their suggestive nature. The jury is to consider all the testimony, not whether defendant's and victim's testimony cancel each other out and reduce the weight to a "tie breaker" of a third-party witness. Rather, it is within the province of the jury to consider all the testimony regardless of the source and assign weight as they see fit. Closing argument should focus on the appropriate level of weight to be afforded to the testimony or other evidence. The prosecutor's comment that the defendant "understands this process[;] [h]e understands how to get up on the stand and spin a story to try to distract you from what actually happened in this case," indicates the suggestion that defendant may have experience on the stand which may imply that he has been in a position to lie on the stand before, in a prior case. This, again, is at best poorly chosen and at worst suggestive of a prior case, which, as the State knows, was excluded by the motion *in limine*. We caution the State to limit statements during closing argument to the evidence presented at trial and avoid playing

fast and loose with potentially improper comments that cannot be mitigated by the trial court's instructions to the jury.

¶ 32    We now move to defendant's contention that the trial court committed plain error and denied him a fair trial when it did not provide definitions to the terms "insulting," "provoking," and "bodily harm," contained in the jury's questions during deliberation. Defendant argues that the trial court had an obligation to issue additional, nonpattern instructions to clarify the terms as they constituted "essential elements of the offense."

¶ 33    "A trial court may exercise its discretion and properly decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or if the giving of an answer would cause the court to express an opinion which would likely direct a verdict one way or another." *People v. Childs*, 159 Ill. 2d 217, 229 (1994). When words used in a jury instruction have a commonly understood meaning, the court need not define them with the use of additional instructions where the pattern jury instructions do not provide an additional definition. *People v. Manning*, 334 Ill. App. 3d 882, 890. The trial court has a duty to instruct the jury further when the original instructions are insufficient or when the jurors are manifestly confused. *People v. Reid,* 136 Ill. 2d 27, 39 (1990). The trial court has discretion in determining how best to respond to a jury question. *Id.* at 38-39. We review the trial court's response for an abuse of discretion. *Id.*

¶ 34    In the present case, the record shows that the instructions tendered to the jury were understandable and sufficiently explained the relevant law. While the instructions did not contain definitions for the terms "insulting," "provoking," and "bodily harm," those terms have commonly understood meanings. Defendant's suggestion that the jury's questions illustrate its difficulty in

deciding whether Robinson-Allen suffered a domestic battery is speculative. The questions reflect the jury's desire for clarification on questions of fact, not a manifest confusion as to the commonly understood definitions of the terms. Whether defendant made physical contact of an "insulting" or "provoking" nature with Robinson-Allen that caused "bodily harm," are factual considerations for the jury. See *People v. Cisneros*, 2013 IL App (3d) 110851, ¶ 12 (whether a victim's injuries rise to the level of great bodily harm is a question for the trier of fact). Thus, we can find no abuse of discretion with the trial court's response to the jury's inquiry. Further, as we can find no error, plain error review of this issue is unmerited. *Eppinger*, 2013 IL 114121, ¶19.

¶ 35    Before concluding we note that defendant avers in both of his contentions that he received ineffective assistance of counsel for failure to object during closing arguments and after the trial court's response to the jury's questions. To succeed under such a theory, however, there must have been error. *People v. Sanders*, 2012 IL App (1st) 102040, ¶ 24. The threshold step of plain-error review is determining whether an error occurred, and counsel cannot be ineffective for failing to object if there was no error to object to. *Id.*

¶ 36                                    III. CONCLUSION

¶ 37    For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 38    Affirmed.